**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

TERRY ASHLEY, *on behalf of himself and others similarly situated*

Plaintiff

v.

GERALD EWELL, *in his capacity as General Sessions Judge for Coffee County,*

**4:26-cv-39**

GREG PERRY, *in his capacity as General Sessions Judge for Coffee County,* and

CRAIG NORTHCOTT, *in his capacity as District Attorney General for the Fourteenth Judicial District*

Defendants

---

**COMPLAINT**

---

The Plaintiff, Terry Ashley, hereby brings suit against the Defendants as follows:

## THE PARTIES

1) The Plaintiff, Terry Ashley, is a private citizen of Coffee County, Tennessee. As discussed below, he also seeks to be a class representative to address the issues raised herein.

2) Defendants Gerald Ewell and Greg Perry are the two general sessions judges for Coffee County, Tennessee. They are sued only in their official capacities.

3) Defendant Craig Northcott is the District Attorney for the Fourteenth Judicial District, a subdivision of Tennessee that includes Coffee County. He is sued only in his official capacity.

## FACTUAL BACKGROUND

4) The State of Tennessee has enacted a statute, Tennessee Code Annotated § 40-11-150, that purports to command courts in certain cases involving domestic assault, or similar crimes, to impose "one (1) or more" bond restrictions on a criminal defendant. In theory, the bond restrictions *may* include:

> (1) An order enjoining the defendant from threatening to commit or committing specified offenses against the alleged victim;
>
> (2) An order prohibiting the defendant from harassing, annoying, telephoning, contacting or otherwise communicating with the alleged victim, either directly or indirectly;
>
> (3) An order directing the defendant to vacate or stay away from the home of the alleged victim and to stay away from any other location where the victim is likely to be;

(4) An order prohibiting the defendant from using or possessing a firearm or other weapon specified by the magistrate;

(5) An order prohibiting the defendant from possession or consumption of alcohol, controlled substances or controlled substance analogues;

(6) An order requiring the defendant to carry or wear a global positioning monitoring system device and, if able, pay the costs associated with operating that device and electronic receptor device provided to the victim, pursuant to § 40-11-152; and

(7) Any other order required to protect the safety of the alleged victim and to ensure the appearance of the defendant in court.

Tenn. Code Ann. § 40-11-150(b).

5) Although the statute itself does not even seem to command it, in Coffee County, Tennessee, standard practice is to impose an outright ban on all contact, specifically between criminal defendant and alleged victim, for every defendant accused of any crime falling within the statutory categories.

6) The crime categories include Domestic Assault, Child Abuse, Child Neglect, Child Endangerment, Stalking, Abuse of the Elderly or Vulnerable, Neglect of the Elderly or Vulnerable, any offense involving a domestic relationship, any violation of an order of protection, or any "aggravated" or "especially aggravated" version of these offenses. Tenn. Code Ann. § 40-11-150(a).

7) Typically, the bond restrictions are set by judicial commissioners, employed by Coffee County but operating essentially as state actors for the Tennessee judiciary.

8) Although Terry Ashley and his counsel are presently unaware of any specific instance where General Sessions Judges Gerald Ewell and Greg Perry personally issued a bond order such as described herein upon issuance of an arrest warrant, the judges are named as Defendants here nonetheless. Specifically, that is because they supervise the judicial commissioners, who carry out the acts on their behalf. *See* Tenn. Code Ann. § 40-1-111(a)(1)(A)(iv). At minimum, they thus repeatedly acquiesce in the conduct described herein.

9) In Tennessee, judicial commissioners are not considered judges. *State v. Bush*, 626 S.W.2d 470, 473 (Tenn. Crim. App. 1981); Tenn. Const. Art. VI § 4 (Requiring election of judges). And in Coffee County specifically, typically they are not even lawyers.

10) The judicial commissioners of Coffee County routinely order these bans on contact without any advance notice to the accused, and without any adversary hearing or specific findings of individualized need.

11) In addition, their ban on contact gets imposed whether the alleged victim wants it or not. In fact, they do not inquire whatsoever as to whether the alleged victim wants the prohibitions.

12) Routinely, District Attorney Craig Northcott and his underlings also seek to enforce the bond restrictions, whether by seeking to revoke or increase the bail of any defendant who violates, or in many cases by adding additional criminal

charges while citing Tennessee Code Annotated § 39-13-113(i) (Violating a No-Contact Order).

13) In Ashley's case specifically, he was originally charged with misdemeanor Domestic Assault on September 29, 2025, for supposedly punching his girlfriend in the mouth and pulling her hair. Ashley lived and shared a child with this woman. Besides this charge, Ashley was also charged with Public Intoxication and Interference with a 911 Call, other misdemeanors.

14) Promptly upon getting arrested, a Coffee County judicial commissioner non-lawyer imposed the following ban on Ashley's future conduct:

> A. The defendant is enjoined from threatening to commit or committing specified offenses set forth in the warrant against the alleged victim or other family or household member
>
> B. The defendant is prohibited from harassing, annoying, telephoning, contacting or otherwise communicating with the alleged victim either directly or indirectly. Contact includes but is not limited to telephoning, emailing, text messaging, communicating through the use of social media platforms, talking to, or using third parties to initiate contact.
>
> C. The defendant is directed to vacate or stay away from the home of the alleged victim and to stay away from any other location where the victim is likely to be.
>
> D. The defendant is prohibited from using or possessing a firearm or other weapon specified by the court as follows: ______________________. [Left blank]
>
> E. The defendant is prohibited from possessing or consuming alcohol or controlled substances.

F. The defendant is ordered to not abuse, threaten to abuse, hurt or try to hurt, or frighten the alleged victim and/or the alleged victim's minor children under 18.

Boxes next to all these provisions were checked.

15) Another line, with a box left unchecked, read:

G. Any other order required to protect the safety of the alleged victim and to ensure the appearance of the defendant in court as determined by this court as follows: ____________________ . [Left blank]

16) This order came on a form order, published by either Coffee County or the State, for use in every case.

17) The alleged victim in this case did not actually want the restrictions.

18) The order in Ashley's case is typical of how these orders read in Coffee County. Normally, all the same boxes are checked as in Ashley's case. The only potential variation would be that in especially serious cases, the commissioner might also fill in some actual information on lines D or G.

19) On very rare occasions, an order might not be implemented at all. But this circumstance only occurs if the commissioner, through 'neglect,' simply forgets to do one. Otherwise, official policy and/or custom is to input an order like Ashley's in every single case fitting the categories listed in the statute. Such orders are entered in 99%+ of cases fitting the crime categories as previously discussed.

20) Since Ashley's arrest, underlings from District Attorney Northcott's office have repeatedly sought to punish him for alleged contact made with the

alleged victim even with her consent, for visiting her home while she was absent with her consent, and for taking efforts to raise the couple's child.

21) As already alluded to above, these enforcement efforts by the District Attorney's Office are rather typical in Coffee County.

22) At all times relevant, the Defendants have acted under color of law, namely as judicial or quasi-judicial actors.

## CLAIMS PRESENTED

### COUNT I

### INFRINGEMENT OF THE FREEDOMS OF ASSOCIATION AND SPEECH, AND OF FAMILY INTEGRITY

### 42 U.S.C. § 1983

**First Amendment, and/or Fourteenth**

23) The other sections are incorporated by reference.

24) By imposing a prior restraint on the Plaintiff(s)' speech without any sufficient governmental purpose, without any adversarial hearing, and/or without narrowly tailoring the ban so as to be reasonable and definite and to target only prohibitable speech, Defendants Gerald Ewell, Greg Perry, and Craig Northcott infringed upon the freedom of speech. Doing so violated the First Amendment under color of law.

25) By imposing a ban on the Plaintiff(s)' communication, contact, and proximity with the alleged victim, without any individualized inquiry or any narrow tailoring of the restriction to the least restrictive means of serving a compelling state interest — Defendants Ewell, Perry, and Northcott directly and substantially burdened the fundamental right to intimate or familial association. They infringed upon said freedoms. Doing so violated the First Amendment and/or the Fourteenth Amendment (substantive due process) under color of law.

**COUNT II**

**VIOLATION OF PROCEDURAL DUE PROCESS**

**42 U.S.C. § 1983**

**Fourteenth Amendment**

26) The other sections are incorporated by reference.

27) By restricting the Plaintiff(s)' liberty — including their rights to speak, associate, visit certain places, and even drink alcohol — without any advance notice, adversarial hearing, or even any ruling by a judge at all, Defendants Ewell, Perry, and Northcott have deprived them of procedural due process. Doing so violated the Fourteenth Amendment under color of law.

## CLASS ACTION ALLEGATIONS

28) The Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

29) The Class Definition: The proposed Class is defined as: All criminal defendants in Coffee County, Tennessee, who have been, are, or will be subjected to pretrial communication, travel, geographic, or conduct restrictions under Tennessee Code Annotated § 40-11-150 where such restrictions are imposed by a judicial commissioner without advance notice, an adversarial hearing, and individualized judicial findings of record.

30) Numerosity under Rule 23(a)(1): The Class is so numerous that joinder of all members is impracticable. Likely hundreds of individuals are arrested annually in Coffee County on charges triggering § 40-11-150. The class also includes future members whose identities cannot be known at this time, making joinder inherently impracticable.

31) Commonality under Rule 23(a)(2): There are questions of law and fact common to the Class that predominate over any questions affecting only individual members. These common questions include, but are not limited to: Whether the Defendants' custom of automatically imposing speech and association restrictions without a hearing violates the First and/or Fourteenth Amendments; Whether the Defendants' custom of allowing a non-lawyer, unelected judicial commissioner to

strip criminal defendants of protected liberties without prior notice, hearing, and individualized findings, violates the Fourteenth Amendment.

32) Typicality under Rule 23(a)(3): The Plaintiff's claims are typical of the claims of the Class. The Plaintiff, like all other members of the Class, was subjected to a standardized, check-box restriction on his speech, association, and personal liberty by a judicial commissioner at booking without notice, a hearing, or individualized findings.

33) Adequacy of Representation under Rule 23(a)(4): The Plaintiff will fairly and adequately protect the interests of the Class. The Plaintiff has no interests antagonistic to those of other Class members. The Plaintiff is represented by counsel who has practiced over 15 years and has experience in civil rights litigation, criminal defense, and constitutional advocacy.

34) Rule 23(b)(2) Declaratory and Injunctive Relief: Class certification is appropriate under Rule 23(b)(2) because the Defendants have acted and/or refused to act on grounds generally applicable to the Class as a whole. Specifically, the Defendants maintain a systematic custom and practice of utilizing standardless, automated bail restriction forms to strip all class members of their constitutional rights. Accordingly, final injunctive and declaratory relief is appropriate respecting the Class as a whole.

## JURISDICTION

35) The federal Court has subject-matter jurisdiction, per 28 U.S.C. § 1331, because the Complaint raises a federal question.

36) This Court in Tennessee has personal jurisdiction because the Defendants are citizens of Tennessee.

37) Venue is proper in the Eastern District, Winchester Division, because the main events happened in Coffee County, Tennessee.

## RELIEF SOUGHT

PREMISES CONSIDERED, Plaintiff Terry Ashley prays for the following:

i) Certification of the class, as discussed above;

ii) Declaratory relief saying that the Defendants have violated the First and Fourteenth Amendments under color of law, as described above;

iii) Injunctive relief (preliminary, and final), to the extent authorized by 42 U.S.C. § 1983, to prohibit the Defendants and their agents from imposing, maintaining, or enforcing any pretrial bail condition, or otherwise any condition ordered in a criminal case, to restrict a defendant's speech, communication, association, or personal liberties — unless the restriction is preceded by a prompt adversarial hearing before an elected judge with individualized, on-the-record judicial findings of necessity. This injunction should especially apply in cases where the alleged victim has not even requested such order;[1] and

iv) Reasonable attorney's fees, per 42 U.S.C. § 1988.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for Terry Ashley
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

1 This Complaint is specifically not meant to address orders of protection, which Terry Ashley has not suffered from, and which arguably avoid some of the legal pitfalls discussed here.